**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

JAVON HIGH,

                      Plaintiff,

      v.                                       9:17-CV-1067
                                            (LEK/DJS)

PA SWITZ, *Physicians Assistant, Ulster Correctional Facility*,

                      Defendant.

**APPEARANCES:**                           **OF COUNSEL:**

JAVON HIGH
Plaintiff, *Pro Se*
3025 West 32nd Street
Apartment 10F
Brooklyn, NY 11224

HON. LETITIA JAMES                ERIK BOULE PINSONNAULT, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART
United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On September 25, 2017, *pro se* Plaintiff Javon High commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both Wyoming Correctional Facility and Ulster Correctional Facility, while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. In his Complaint, Plaintiff alleged that he suffers from chronic, severe pain, for

which he was prescribed certain medications and physical therapy. Compl. at p. 3. Plaintiff alleged that while at Ulster, he was seen by P.A. Switz, who told Plaintiff that he would not be getting the physical therapy or prescribed medications at Ulster, and that he could attempt to get this treatment when he got to his designated facility, which would not be for a month or two. *Id.* at pp. 4-5. Plaintiff alleges that he then went thirty-five days with severe pain before he was transferred to Wyoming. *Id.* at p. 6. Plaintiff alleged continuing issues related to his pain and treatment after he was transferred.[1] *Id.* at pp. 6-19. Remaining in this District are Plaintiff's claims arising out of his confinement at Ulster, which are only those against Defendant Genevieve Switz.

Presently before the Court is Defendant's Motion for Summary Judgment. Dkt. No. 32. In her Motion, Defendant warned Plaintiff of the potential consequences of his failure to respond to the Motion. Dkt. No. 32 at p. 3. Plaintiff's opposition was originally due on June 17, 2019. Dkt. No. 34. The Court notified Plaintiff of this deadline and also warned him of the consequences of failing to respond to the Motion. *Id.* Upon Plaintiff's failure to oppose to the Motion, the Court *sua sponte* extended the deadline to August 2, 2019, again warning Plaintiff of the possible consequences of his failure to respond and providing that no further extensions would be granted absent a showing of extraordinary circumstances. Dkt. No. 35. On July 8, 2019, Plaintiff submitted a motion for the appointment of counsel. Dkt. No. 36. The Court denied Plaintiff's Motion for counsel, but *sua sponte* granted Plaintiff a further extension of time to respond to the Motion, until

---

[1] The claims regarding Plaintiff's treatment at Wyoming were severed and transferred to the Western District of New York upon initial review of the Complaint. Dkt. No. 8.

August 30, 2019. Dkt. No. 37. Plaintiff has failed to submit any response to the Motion, and has not filed any further submissions of any kind to the Court.

For the reasons that follow, the Court recommends Defendant's Motion be granted.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DISCUSSION

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'"

*Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong of the Eighth Amendment analysis in the context of a post-conviction detainee is a subjective standard requiring the plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v.*

- 6 -

*Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In the present matter, assuming for purposes of this Motion that Plaintiff had a sufficiently serious medical need that would satisfy the objective prong of the Eighth Amendment, there is no dispute as to material facts regarding the subjective prong. To satisfy this prong Plaintiff must establish that Defendant knew of and disregarded an excessive risk to Plaintiff's health. *Crosby v. O'Connell*, 2010 WL 3909714, at *2 (N.D.N.Y. Sept. 30, 2010). Defendant was a physician assistant at Ulster during the relevant time period. Dkt. No. 33-1, Switz Decl., ¶ 2. Defendant never saw or treated Plaintiff while he was housed at Ulster. *Id.* at ¶ 9. She did make one entry in Plaintiff's ambulatory health record on October 6, 2016, after Plaintiff had been seen by a registered nurse that morning. *Id.* at ¶¶ 10-11. Defendant noted that according to his medical records, Plaintiff had cervical spine compression surgery in April 2016, that he was a New Commit, that he needed to follow up with neurology, and that he should return to the clinic if his symptoms worsened. *Id.* Defendant's understanding is that upon transfer to his permanent facility, a nurse would review Plaintiff's medical records and would refer the note that Plaintiff follow up with neurology to a doctor. *Id.* at ¶ 12. As Defendant's only involvement in Plaintiff's care was reviewing his records and noting that he needed to follow up with neurology and should return to clinic if his symptoms worsened, any involvement she can be said to have had in his care did not constitute deliberate indifference.

To the extent that Plaintiff alleges Defendant was more involved in his care than discussed above, there is no question of fact as to this issue on this record. Plaintiff's deposition testimony makes apparent that he does not have an articulable basis for asserting that Defendant had played any greater role in his care. When asked why he included Defendant in the lawsuit, Plaintiff responded, "Well that's – that's the – that's the head – that's the person that I put up and the courts agreed and they followed suit. They didn't have an issue with taking her name down." Dkt. No. 32-3, Pl.'s Dep., p. 37. When then asked how he knew it was her versus anyone else, Plaintiff responded, "I just know. I just – I just – I just put her name in, I guess." *Id.* Plaintiff also testified that he has no independent recollection of how the lack of pain medication at Ulster related to something that Defendant did. *Id.* at p. 67.

Finally, Plaintiff's testimony appears to indicate that he believed Defendant may have been responsible for his care in some supervisory capacity; he testified that Defendant "oversees all the medical" in Ulster. *Id.* at p. 26. This appears to be baseless: Defendant stated in her Declaration that she does not supervise or oversee the medical staff at Ulster. Switz Decl. at ¶ 16. Plaintiff fails to raise a question of material fact as to Defendant's involvement in a supervisory capacity.

There is therefore no evidence in the record that Defendant acted with the mental state necessary for a deliberate indifference claim. As such, there is no question of material fact and the Court recommends the Motion be granted.[2]

---

[2] Defendant also moves for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as to his claim in this case. Dkt. No. 32-1 at pp. 5-9. Since the Court finds that summary judgment is

## III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 32) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: January 13, 2020
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

appropriate on the merits of Plaintiff's Eighth Amendment claim, the Court does not reach Defendant's exhaustion argument.

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).